UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
WAVEYBABY HOLDINGS, LLC,

Plaintiff,

-against-

MSCHF PRODUCT STUDIO, INC., and
GABRIEL WHALEY,

Defendants.
---------------------------------------------------X

REPORT AND RECOMMENDATION
23 CV 2486 (WFK)(RML)

LEVY, United States Magistrate Judge:

By order dated February 20, 2026, the Honorable William F. Kuntz, II, United States District Judge, referred defendant MSCHF Product Studio, Inc.'s motion to dismiss to me for report and recommendation. For the reasons stated below, I respectfully recommend that the motion be denied.

## BACKGROUND

Plaintiff WaveyBaby Holdings, LLC ("WaveyBaby" or "plaintiff"), a Massachusetts limited liability company, filed this action on March 31, 2023 against defendant MSCHF Product Studio, Inc. ("MSCHF" or "defendant"),[1] a Delaware corporation with a principal place of business in Brooklyn, New York, asserting claims for trademark infringement under 15 U.S.C. § 1114, unfair competition and false designation of origin under 15 U.S.C. § 1125(a), common law trademark infringement and unfair competition under New York law, and

[1] Defendant Gabriel Whaley was voluntarily dismissed from this case without prejudice on December 18, 2025. (See Notice of Voluntary Dismissal, so-ordered Dec. 18, 2025, Dkt. No. 19.)

unfair trade practices under New York General Business Law ("GBL") § 349.[2] (Complaint, dated Mar. 31, 2023 ("Compl."), Dkt. No. 1.) WaveyBaby is a streetwear clothing business that was founded in January 2020 and has an internet retail store located at https://www.waveybaby.co, where it sells apparel under the WaveyBaby logo trademark.[3] (Id. ¶ 2.) According to the complaint, plaintiff obtained a United States Patent and Trademark Office ("USPTO") registration for the mark "WaveyBaby" on February 23, 2021. (Id. ¶ 2, Ex. 1.) Plaintiff accuses MSCHF of infringing its mark by designing, developing, advertising, and selling the "Wavy Baby" shoe, marketing the shoe on its website, https://mschfsneakers.com/wavy-baby,[4] the MSCHF Sneaker app, on popular social media platforms, in various music videos, and elsewhere. (Id. ¶¶ 5-7.) Plaintiff seeks an injunction, treble damages, punitive damages, restitution, attorney's fees and costs, and prejudgment and post-judgment interest. (Id. at 15-16.)

MSCHF describes itself as "an American art collective whose projects—exhibited at renowned art galleries and venues—critique and comment upon American culture" and that is "[m]ost recently known for commentary on the fashion industry with the descriptively-named Big Red Boot" and for its critique of "collaboration culture in the sneaker industry by selling shoes as if they were collaborations with Jesus of Nazareth or Lucifer, titled

[2] Plaintiff voluntarily dismissed its claim of common law civil conspiracy under New York law on June 30, 2026. (See Notice of Voluntary Dismissal, so-ordered June 30, 2026, Dkt. No. 23.)

[3] Plaintiff describes itself as "a shoe and apparel company" (Compl. ¶ 17), but there are currently no shoes for sale on its website. (See https://www.waveybaby.co) (last checked Aug. 25, 2026.) In addition, the registration for the "WaveyBaby" mark refers to "Class 25" items listed as "Beanies; Hats; Headbands; Jackets; Sweaters; Sweatpants; T-shirts; Track suits," but does not specifically reference footwear. (Compl., Ex. A.)

[4] This page no longer exists as the shoe is now sold as the "V2.wav Sneaker." (See https://store.mschf.com/products/v2-wav) (last checked Sept. 2, 2026).

Jesus Shoes and Satan Shoes respectively." (Defendants' Memorandum of Law, filed May 9, 2023 ("Defs.' Mem."), Dkt. No. 13-1, at 1-2.) MSCHF states that it released an artwork titled "Wavy Baby," which is "a wildly distorted evocation of Vans' iconic skate shoe, the Old Skool." (Id. at 2.) It explains:

> In the artistic tradition of Marcel Duchamp, MSCHF took the Old Skool, liquified it, and created a commentary on the Old Skool's fall from grace as a symbol of west-coast skateboard culture to a paragon of mass-consumerism. Invoking Renee Magritte's The Treachery of Images, MSCHF asserted the artwork's core expression: Ceci n'est pas une chaussure de skate ("This is not a skate shoe"). The entire Wavy Baby project follows in the artistic tradition pioneered by Duchamp, and one which Magritte himself joined, of highlighting absurdities through the use of common, mass-produced objects. . . . As explained on the website which accompanied the release of the Wavy Baby artwork, the title also furthers MSCHF's project of commenting on the absurdity of Vans, consumerism, and expectations about the line between our digital and physical worlds.

(Id.) In other words, MSCHF claims that it released the Wavy Baby shoe as a social critique of west coast skate culture. (Id. at 13.)

In an earlier-filed related case, Vans, Inc. v. MSCHF Product Studio, Inc., 602 F. Supp. 3d 358, 373 (E.D.N.Y. 2022), this court granted a motion for a temporary restraining order and preliminary injunction, prohibiting MSCHF from advertising, marketing, promoting, offering to sell, selling, distributing, and/or taking orders for its Wavy Baby shoes. MSCHF appealed that decision, and on December 5, 2023, the Second Circuit Court of Appeals affirmed. See Vans, Inc. v. MSCHF Prod. Studio, Inc., 88 F.4th 125 (2d Cir. 2023). In reaching its decision, the Second Circuit held that no special First Amendment protections applied to insulate MSCHF against the plaintiff's trademark infringement claim. Id. at 128.

On August 20, 2024, the parties to that case entered into a so-ordered Consent Judgment and Permanent Injunction in which MSCHF agreed to be permanently enjoined from

advertising, marketing, distributing, importing, manufacturing, promoting, offering for sale, or selling the Wavy Baby shoes. (See Consent Judgment and Permanent Injunction in 22 CV 2156, dated Aug. 20, 2024, Dkt. No. 80; Stipulation of Dismissal in 22 CV 2156, dated Sept. 3, 2024, Dkt. No. 83.) Defendant states that it has not used the title "Wavy Baby" or referenced the work since this court entered the preliminary injunction in April 2022.[5] (Defs.' Mem. at 3.) Defendant moves to dismiss plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Id. at 6, 18.) Notwithstanding the delays in the instant case, the parties have not engaged in any discovery and the case remains at a nascent stage.

## DISCUSSION

### A. Standard of Review

On a motion to dismiss for failure to state a claim, "the court's task is to assess the legal feasibility of the complaint." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, meaning that there is more than a sheer possibility that a defendant acted unlawfully." Concord Assocs., L.P. v. Ent. Props. Tr., 817 F.3d 46, 52 (2d Cir. 2016) (internal quotation marks and citation omitted).

In evaluating a motion to dismiss under Rule 12(b)(6), the court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all

[5] Because the Wavy Baby shoe is not currently for sale, plaintiff no longer seeks injunctive relief. (See Transcript of Status Conference, dated July 1, 2026, Dkt. No. 25, at 6.) The request for a stay is likewise moot.

reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "In deciding a motion to dismiss, the court may only consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit, or matters of which judicial notice may be taken, including official records of the USPTO." Bayside Cmty. Ambulance Corps., Inc. v. Glen Oaks Volunteer Ambulance Corps., Inc., No. 24 CV 2114, 2024 WL 4450850, at *2 (E.D.N.Y. Oct. 9, 2024) (citations omitted). I will address each cause of action in turn.

B. Federal Trademark Infringement

"In order to prevail on a trademark infringement claim for registered trademarks, pursuant to 15 U.S.C. § 1114 . . . a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, . . . (5), without the plaintiff's consent." 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (internal quotation marks and citations omitted). "In addition, the plaintiff must show that defendant's use of that mark is likely to cause confusion . . . as to the affiliation, connection, or association of [the defendant] with [the plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [the plaintiff]." WhenU.Com, Inc., 414 F.3d at 407 (internal quotation marks and citations omitted); see also 1-800 Contacts, Inc. v. JAND, Inc., 119 F.4th 234, 246 (2d Cir. 2024). It is undisputed that plaintiff possesses a valid registration for the WaveyBaby mark, which is *prima facie* evidence that the mark is valid and protectable. (See Compl., Ex. A); Matal v. Tam, 582 U.S. 218, 226–27 (2017).

"Confusion must be proven by 'probability[,] . . . not a mere possibility[,]' which would affect 'numerous ordinary prudent purchasers.'" Lion-Aire Corp. v. Lion Air Installation, Inc., 747 F. Supp. 3d 488, 503 (E.D.N.Y. 2024) (quoting Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 383 (2d Cir. 2005)); see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 117 (2d Cir. 2009) ("[A]ctual confusion is not necessary to establish a likelihood of confusion[.]"). "To determine whether there is a likelihood of consumer confusion, [courts in the Second Circuit] look to [the] eight . . . Polaroid factors." Souza v. Exotic Island Enters., Inc., 68 F.4th 99, 110 (2d Cir. 2023) (first quoting Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir. 2013), then citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)). "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." Kelly-Brown, 717 F.3d at 307 (quoting Starbucks Corp., 588 F.3d at 115.) "Those factors are neither exhaustive nor applied mechanically." Souza, 68 F.4th at 110; accord Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000) ("[T]he evaluation of the Polaroid factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." (citation omitted)). "No single factor is dispositive . . . . But it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why." Int'l Info. Sys. Sec. Certification Consortium,

Inc. v. Sec. Univ., LLC, 823 F.3d 153, 160 (2d Cir. 2016) (quoting Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 400 (2d Cir. 1995)).

"[L]ikelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." Vill. Farms, L.P. v. Jacob's Vill. Farm Corp., No. 20 CV 2701, 2022 WL 992632, at *4 (E.D.N.Y. Apr. 1, 2022) (quoting Van Praag v. Gratton, 993 F. Supp. 2d 293, 303 (E.D.N.Y. 2014)); see also Nasdaq Stock Mkt. v. Archipelago Holdings, 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004) (recognizing that assessing likelihood of confusion involves a factual inquiry which is inappropriate when determining a motion to dismiss). This is because, on a Rule 12(b)(6) motion, the court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Nutriband, Inc. v. Kalmar, No. 19 CV 2511, 2020 WL 4059657, at *6 (E.D.N.Y. July 20, 2020) (citation omitted); see also Twombly, 550 U.S. at 555 (explaining that at the motion to dismiss stage, the court must simply determine whether plaintiff has alleged enough concrete facts that, if true, would satisfy the applicable standard). With this standard in mind, I will analyze each of the Polaroid factors.

1) Strength of the Mark

"The strength of a trademark is assessed based on either or both of two components: (1) the degree to which it is inherently distinctive; and (2) the degree to which it has achieved public recognition in the marketplace, sometimes called acquired strength." RiseandShine Corp. v. PepsiCo, Inc., 41 F.4th 112, 120 (2d Cir. 2022). Both components favor plaintiff.

First, WaveyBaby is inherently distinctive as an arbitrary or fanciful trademark. "To describe different degrees of inherent distinctiveness, the trademark law utilizes four

categories. In order of ascending strength, they are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." Id. "A generic mark is a common name, such as automobile or aspirin, that identifies a kind of product." Id. (citing Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993)). "A mark that consists of a generic identifier of the product receives no protection from the law of trademark, even if the mark has acquired public recognition as identifying the source of the product." Id. at 120-21 (citation omitted).

"One rung above the unprotectable generic marks are descriptive marks. These are marks that 'tell[ ] something about a product, its qualities, ingredients or characteristics.'" Id. (quoting Gruner + Jahr, 991 F.2d at 1076). "Descriptive marks are presumptively unprotectable, but can acquire a degree of protection if they have acquired secondary meaning, i.e. an acquired public recognition as a mark identifying the source." Id.

"Suggestive marks occupy the next higher rung. Suggestive marks suggest (rather than directly describe) the product on which they are employed, or its attributes, sometimes requiring imagination to grasp the linkage." Id. (citation omitted); see also Gruner + Jahr, 991 F.2d at 1076 (noting that "ORANGE CRUSH," an orange flavored beverage, is an example of a suggestive mark). "They are the weakest marks that are protectable without need to show acquired secondary meaning." RiseandShine Corp., 41 F.4th at 121 "They receive a narrower scope of protection than the protection accorded to arbitrary or fanciful marks — those at the top of the ladder." Id. (citation omitted).

"Arbitrary and fanciful marks – i.e., those that make no logical reference to the product or service on which they are used, such as Google for a search engine, Kodak for cameras, or Quilted Giraffe for a restaurant, receive the strongest protection." Id. (citing Gruner

+ Jahr, 991 F.2d at 1075). "This is because other marketers of the same products or services have no justification or cognizable interest in using the same terms in referring to their own market offerings." Id. The WaveyBaby mark falls into this category.

Second, plaintiff has alleged substantial sales, marketing expenditures, and media recognition sufficient to plead the acquired strength of the WaveyBaby mark. (See Compl. ¶¶ 1, 3, 19.) This factor is therefore favorable to WaveyBaby. See Solid 21, Inc. v. Jomashop Inc., No. 19 CV 1179, 2020 WL 9816843, at *4 (E.D.N.Y. Nov. 30, 2020) (finding that "[p]laintiff's allegations support[ed] a plausible inference that the mark ha[d] become distinctive in the marketplace" when plaintiff alleged continuous and exclusive use and promotion of its mark, significant investment in promoting its products, and consumer recognition of the trademark as its brand).

2) Similarity of the Marks

Obviously, the names WaveyBaby and Wavy Baby are very similar. However, this factor requires courts to look beyond the text and "analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." Louis Vuitton Malletier v. Dooney & Burke, Inc., 454 F.3d 108, 117 (2d Cir. 2006) (internal quotation marks and citations omitted). Similarity is assessed in marketplace context, not merely through "side-by-side" inspection. See id. at 112.

Sneakers, like clothing, are generally a common consumer item. In this case, both plaintiff's clothing line and defendant's shoes were marketed and sold to the general public online, and both were promoted by figures in the hip-hop industry. (See Compl. ¶¶ 3, 8, 19, 25);

see also Vans, Inc., 88 F.4th at 131. Accordingly, plaintiff's allegations make similarity plausible. This factor favors WaveyBaby.

3) Proximity of the Products

In considering competitive proximity, the court is concerned with "'whether and to what extent the two products compete with each other' and 'the nature of the products themselves and the structure of the relevant market.'" Morningside Grp. Ltd. v. Morningside Capital Grp., 182 F.3d 133, 140 (2d Cir. 1999) (quoting Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 480 (2d Cir. 1996)). "Among the considerations germane to the structure of the market are the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." Cadbury Beverages, 73 F.3d at 480.

In Vans, Inc., the Second Circuit upheld the district court's finding that MSCHF's Wavy Baby shoe was not merely a work of art for display, but "a pair of sneakers meant to be worn." Vans, Inc., 88 F.4th at 140. As the Second Circuit observed, MSCHF advertised the Wavy Baby shoe as a wearable piece of footwear in an online marketing campaign, after which it sold 4,306 pairs of the Wavy Baby shoe in one hour. Id. at 128, 140; (see also Compl. ¶ 7). WaveyBaby markets its branded apparel in the same online marketplace, and both companies' products are meant to convey a message or fashion statement about the wearer. (Compl. ¶¶ 3, 62.) Plaintiff therefore plausibly alleges that the products are, or were, competitively proximate.

4) Bridging the Gap

"Bridging the gap refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." Capri Sun GmbH v. Am. Beverage Corp., 595 F. Supp. 3d 83, 169 (S.D.N.Y. 2022) (internal

quotation marks and citation omitted). Where products are already in direct competition, this factor is neutral. See Star Indus., Inc., 412 F.3d at 387 (observing that where "products are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant to the Polaroid analysis").

5) Evidence of Actual Confusion

"The absence of evidence of actual consumer confusion is not necessarily fatal to a Lanham Act claim, . . . particularly at the motion to dismiss stage." JTH Tax LLC v. AMC Networks Inc., 694 F. Supp. 3d 315, 338 (S.D.N.Y. 2023). Defendant sold its Wavy Baby shoes for less than two weeks, thereby limiting the period in which actual confusion could have surfaced before Judge Kuntz issued the preliminary injunction on April 29, 2022. (Defs.' Mem., Ex. 3 at 49); see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986) (noting that where "there has been little chance for actual confusion . . . [i]t would be unfair to penalize [plaintiff] for acting to protect its trademark rights before serious damage has occurred"). Regardless, "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." Id.; see also Getty Petroleum Corp. v. Island Transp. Corp., 878 F.2d 650, 656 (2d Cir. 1989). Plaintiff does offer some anecdotal examples of actual customer confusion outside the complaint. (See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, dated May 23, 2023, Dkt. No. 14, Ex. B.) At this stage, the absence of pleaded actual confusion is neutral. Googly Eye Cru, LLC v. Fast Retailing USA, Inc., No. 24 CV 3709, 2025 WL 692125, at *5 (S.D.N.Y. Mar. 4, 2025) (finding same on motion to dismiss).

6) Defendant's Good Faith

"This factor considers 'whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.'" Arrow Fastener Co., 59 F.3d at 397 (quoting Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 583 (2d Cir. 1991)). Plaintiff alleges that on April 12, 2022, before defendant released the Wavy Baby shoes on April 18, 2022, its corporate counsel informed MSCHF that should defendant open sales of the Wavy Baby shoes on its website, it would be infringing on plaintiff's trademark. (Compl. ¶¶ 4, 38.) Nonetheless, according to plaintiff, defendant "knowingly, willfully, intentionally, and maliciously adopted and used a confusingly similar name to Plaintiff's trademark." (Id. ¶ 40.) This allegation of willful conduct is sufficient to plead intent at this point in the litigation.

7) Quality of MSCHF's Product

This factor "is primarily concerned with whether the [plaintiff's] reputation could be jeopardized by virtue of the fact that the [defendant's] product is of inferior quality." Googly Eye Cru, LLC, 2025 WL 692125, at *5 (internal quotation marks and citation omitted). The complaint does not allege that MSCHF's Wavy Baby sneaker is inferior to plaintiff's apparel. Nor do the pleadings permit a quality comparison. Products of comparable quality can still create source confusion, but this factor does not materially favor either party on the allegations presented. See id.

8) Consumer Sophistication

"The more sophisticated the consumers, the less likely they are to be misled by similarity in marks." TCPIP Holding Co. v. Haar Commc'ns, Inc., 244 F.3d 88, 102 (2d Cir. 2001). The Second Circuit noted in Vans, Inc. that "MSCHF engaged in broad advertising to the 'general public,' and customers of sneakers are not professional buyers." 88 F.4th at 142. "The

fact that the Wavy Baby [shoe] was conceived as a parody does not change th[e] assessment" that consumers were unsophisticated, since the "message of ridicule or pointed humor" was not sufficiently clear to succeed in creating a contrast with the parody's subject, the Vans Old Skool sneaker. Id. (quoting Jack Daniel's Props., Inc. v. VIP Prods. LLC, 599 U.S. 140, 161 (2023)). Thus, this factor favors plaintiff.

In sum, I find that all of the Polaroid factors either weigh in favor of permitting the trademark infringement claim to proceed or are neutral. I therefore conclude that plaintiff has plausibly pleaded a likelihood of consumer confusion, and I respectfully recommend that defendant's motion to dismiss plaintiff's trademark infringement claim be denied.[6]

C. False Designation of Origin

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), makes civilly liable any person who:

> on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

[6] Defendant briefly argues that it "possesses a descriptive fair use defense to an infringement claim" because "Wavy Baby serves as a descriptive title." (Defs.' Mem. at 6, 15.) "To demonstrate fair use, a defendant must establish that it used the allegedly infringing term (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 92 (2d Cir. 2020) (internal quotation marks and citation omitted). "Because fair use is a fact-intensive inquiry, it is rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage." Grant v. Trump, 563 F. Supp. 3d 278, 284 (S.D.N.Y. 2021). A motion to dismiss may only be granted "where the facts necessary to establish the defense are evident on the face of the complaint." Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013). Here, such facts are not so evident, and I recommend that this argument be rejected.

15 U.S.C. § 1125(a)(1)-(a)(1)(A).

The analysis under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) is substantially the same. See Starbucks Corp., 588 F.3d at 114. To plead either claim, a plaintiff must adequately allege "(1) that it has a valid mark entitled to protection, and (2) that the defendant's use of that mark is likely to cause confusion." Sussman-Automatic Corp. v. Spa World Corp., 15 F. Supp. 3d 258, 266 (E.D.N.Y. 2014) (internal quotation marks and citation omitted); see also Victorinox AG v. B & F Sys., Inc., 114 F. Supp. 3d 132, 139 (S.D.N.Y. 2015) (analyzing a claim under section 1125(a)(1)(A) with the same elements and evidence as a claim under section 1114(1).) As explained, plaintiff has pleaded both elements adequately. Accordingly, I find that plaintiff plausibly pleads a cause of action under section 1125(a).

D. Trademark Infringement and Unfair Competition Under New York Law

"Under New York common law, the standards for trademark infringement and unfair competition are 'virtually identical' to the standard under the Lanham Act, 'except that New York law requires an additional showing of bad faith'" for an unfair competition claim. CDC Newburgh Inc. v. STM Bags, LLC, 692 F. Supp. 3d 205, 229 (S.D.N.Y. 2023) (alteration adopted)(quoting Lopez v. Adidas Am., Inc., No. 19 CV 7631, 2020 WL 2539116, at *15 (S.D.N.Y. May 19, 2020)); accord 1-800 Contacts, Inc. v. JAND, Inc., 608 F. Supp. 3d 148, 160-61 (S.D.N.Y. 2022), aff'd, 119 F.4th 234 (2d Cir. 2024); see also Capri Sun GmbH, 595 F. Supp. 3d at 145 ("For a trademark infringement claim under New York common law, 'it is well-established that its elements mirror the Lanham Act claim's.'" (alterations adopted) (quoting Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 331 F. Supp. 3d 221, 250 (S.D.N.Y. 2018))); Chanel, Inc. v. Richardson, No. 17 CV 4565, 2018 WL 6097865, at *2 (S.D.N.Y. Nov. 20, 2018) ("The elements of a federal trademark-infringement claim and a New York unfair competition

claim are almost indistinguishable, except that New York requires an additional element of bad faith." (quoting Louis Vuitton Malletier, S.A. v. Hyundai Motor Am., No. 10 CV 1611, 2012 WL 1022247, at *20 (S.D.N.Y. Mar. 22, 2012))). "Bad faith can be found when the junior user has prior knowledge of the senior's mark and the marks are so close as to infer copying. And, allegations of willful conduct or conscious awareness may be sufficient." VOX Amplification Ltd. v. Meussdorffer, 50 F. Supp. 3d 355, 368 (E.D.N.Y. 2014) (quoting Pearson Educ., Inc. v. Kumar, 721 F.Supp.2d 166, 192 (S.D.N.Y. 2010)).

Plaintiff alleges that defendant knew about plaintiff's brand and moved forward with its drop despite plaintiff's counsel's warning that the Wavy Baby shoe would infringe its trademark. (Compl. ¶¶ 4, 5.) Accordingly, and for the reasons explained above, I find that plaintiff's complaint satisfies the pleading requirements for claims of common law trademark infringement and unfair competition under New York law.

E. Unfair Trade Practices Under New York Law

GBL § 349 prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce[.]" To state a claim under this statute, a plaintiff must "allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675 (N.Y. 2012)). Under New York law, courts "apply an objective standard in determining whether acts or practices are materially deceptive or misleading to 'a reasonable consumer acting reasonably under the circumstances.'" Orrico v. Nordic Nats., Inc., No. 22 CV 3195, 2023 WL 6308015, at *2 (E.D.N.Y. Sept. 28, 2023) (quoting Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745

(N.Y. 1995)). The reasonable consumer standard requires the plaintiff to establish "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Bustamante v. KIND, LLC, 100 F.4th 419, 426 (2d Cir. 2024) (quoting McGinity v. Procter & Gamble Co., 69 F.4th 1093, 1097 (9th Cir. 2023)).

To survive a motion to dismiss, a plaintiff must plausibly allege that the conduct complained of was "likely to mislead a reasonable consumer acting reasonably under the circumstances." Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018) (internal quotation marks and citation omitted). Because this inquiry is context-specific, it "is generally a question of fact not suited for resolution at the motion to dismiss stage." Kelly v. Beliv LLC, 640 F. Supp. 3d 286, 295 (S.D.N.Y. 2022) (quotation omitted); see also Axon v. Citrus World, Inc., 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) ("[T]he question of whether a reasonable consumer would be deceived by a [ ] label is not typically resolved at the motion to dismiss stage"); Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., 171 N.E.3d 1192, 1198 (N.Y. 2021) ("What is objectively reasonable depends on the facts and context of the alleged misrepresentations[.]").

I find that plaintiff has plausibly alleged that reasonable consumers could have been misled into believing that defendant's Wavy Baby shoe was designed and sold by WaveyBaby. I therefore recommend that defendant's motion to dismiss plaintiff's unfair competition claim be denied.

## CONCLUSION

For the reasons stated above, I respectfully recommend that defendant's motion to dismiss be denied. Any objections to this Report and Recommendation must be filed

electronically within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 4, 2026