**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAVEYBABY HOLDINGS, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>MSCHF PRODUCT STUDIO, INC., and GABRIEL WHALEY,<br><br>Defendants. | Case No. 1:23-cv-02486 (WFK) (RML) |

# DEFENDANT MSCHF PRODUCT STUDIO, INC.'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ROBERT M. LEVY DATED SEPTEMBER 4, 2026 (DKT. NO. 26)

Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C)

Oral Argument Requested

John F. Belcaster
General Counsel
MSCHF Product Studio, Inc.
62 Bayard Street
Brooklyn, New York 11222
john@mschf.xyz

Counsel for Defendant MSCHF Product Studio, Inc.

**Date of Service: September 17, 2026**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

STANDARD OF REVIEW ........ 3

ARGUMENT ........ 4

I. THE R&R IMPROPERLY RESOLVED THE MOTION ON MATERIALS OUTSIDE THE COMPLAINT (R&R at 2 nn.3–4, 3–4, 9–13) ........ 4

A. The Rule 12(b)(6) Record Does Not Include Preliminary-Injunction Findings From Another Case, Opposition Exhibits, or the Court's Own Investigation ........ 4

B. The R&R's Findings on Similarity, Proximity, and Sophistication Rest on the *Vans* Record, Not the Complaint ........ 5

C. The R&R Also Relied on Plaintiff's Opposition Exhibit and on the Magistrate Judge's Own 2026 Website Review ........ 6

D. The Error Is Not Harmless ........ 6

II. THE R&R ERRED IN DISREGARDING PLAINTIFF'S ADMISSIONS IN THE USPTO PROSECUTION HISTORY OF THE ASSERTED REGISTRATION (R&R at 5, 7–13) ........ 7

A. The Prosecution History Is Properly Before the Court ........ 7

B. The R&R Does Not Mention the Prosecution History ........ 8

C. The Admissions Defeat the Plausibility of Confusion ........ 9

III. THE R&R'S POLAROID ANALYSIS MISAPPLIES SECOND CIRCUIT LAW (R&R at 7–13) ........ 10

A. Strength of the Mark (R&R at 7–9) ........ 10

B. Similarity of the Marks (R&R at 9–10) ........ 11

C. Competitive Proximity (R&R at 10) ........ 12

D. Good Faith (R&R at 11–12) ........ 13

E. Consumer Sophistication (R&R at 12–13) ........ 14

F. Actual Confusion and Quality (R&R at 11, 12) ........ 14

G. Properly Weighed, the Factors Do Not Make Confusion Plausible ........ 15

IV. THE R&R FAILED TO ADDRESS THE SINGLE-WORK-TITLE ARGUMENT AND MISAPPLIED THE FAIR-USE STANDARD (R&R at 13 n.6) ........ 15

V. THE R&R DOES NOT ADDRESS MSCHF'S FIRST AMENDMENT DEFENSE (R&R at 3) ........ 16

VI. THE STATE-LAW CLAIMS SHOULD BE DISMISSED (R&R at 14–16) ........ 17

A. Common-Law Infringement and Unfair Competition ........ 17

B. General Business Law § 349 ........ 17

VII. AT A MINIMUM, THE COURT SHOULD NOT ADOPT THE R&R'S FACTUAL CHARACTERIZATIONS DRAWN FROM THE VANS RECORD.................18

CONCLUSION.........................................................................................................................19

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011)........................4, 9, 12, 14

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)........................................................3

*Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384 (2d Cir. 1995)............................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................................3, 6, 13, 15

*Bayside Cmty. Ambulance Corps., Inc. v. Glen Oaks Volunteer Ambulance Corps., Inc.*, No. 24 CV 2114, 2024 WL 4450850 (E.D.N.Y. Oct. 9, 2024)................................................7

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992)........................11

*Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474 (2d Cir. 1996)............................................12

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)......................................................4

*Cheddar Bob's Inc. v. Macsnmelts Mgmt. Co.*, No. 16 CV 1331, 2020 WL 1323018 (E.D.N.Y. 2020)..........................................................................................................................12

*Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463 (3d Cir. 2005)..............................7

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006)......................4

*Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016)...........................................................................4

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269 (S.D.N.Y. 2003)....................18

*Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156 (Fed. Cir. 2002)....................................16

*Hynes v. Squillace*, 143 F.3d 653 (2d Cir. 1998)..........................................................................18

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153 (2d Cir. 2016).......................................................................................................................... 10

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66 (2d Cir. 1998)........................................................................................................................ 4, 6

*JA Apparel Corp. v. Abboud*, 568 F.3d 390 (2d Cir. 2009)........................................................16

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023)...........................................17

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013)................................................................16

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)...........................................4, 9

*Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576 (2d Cir. 1991)......................................................10

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2d Cir. 2006)........................11

*Luv n' Care, Ltd. v. Walgreen Co.*, 695 F. Supp. 2d 125 (S.D.N.Y. 2010).................................18

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012)........................................................................................................................ 15

*Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758 (2d Cir. 2002)....................................................3

*Mayes v. Summit Entm't Corp.*, No. 16 CV 6533, 2018 WL 566314 (E.D.N.Y. Jan. 18, 2018)........................................................................................................................ 18

*Medici Classics Prods. LLC v. Medici Grp. LLC*, 590 F. Supp. 2d 548 (S.D.N.Y. 2008)......12, 15

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207 (E.D.N.Y. 2020)............................7

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016)..........................................................4

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519 (S.D.N.Y. 2012)...........18

*Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158 (2d Cir. 2004)...............................11

*RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112 (2d Cir. 2022)............................................10

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)..................................................................16, 17

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995)......................................18

*Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669 (Fed. Cir. 1984)....................7

*Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373 (2d Cir. 2005)........................................2, 9, 13

*Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998)..........................................10

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88 (2d Cir. 2001)...................................10

*Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74 (2d Cir. 2020)....................................2, 13

*Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113 (2d Cir. 1999)..................................................10

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981).........................................................................4, 6

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 602 F. Supp. 3d 358 (E.D.N.Y. 2022), *aff'd*, 88 F.4th 125 (2d Cir. 2023)..................................................................................................passim

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998)......................................................5, 6

**Statutes and Rules** **Page(s)**

15 U.S.C. § 1114..............................................................................................................................2

15 U.S.C. § 1115(b)(4)....................................................................................................................15

15 U.S.C. § 1125(a)....................................................................................................................2, 15

28 U.S.C. § 636(b)(1)....................................................................................................................1, 3

N.Y. Gen. Bus. Law § 349......................................................................................................2, 17, 18

Fed. R. Civ. P. 12(b)(6).............................................................................................................passim

Fed. R. Civ. P. 12(d)...................................................................................................................1, 4, 7

Fed. R. Civ. P. 72(b).......................................................................................................................1, 3

**Other Authorities** **Page(s)**

U.S. Patent & Trademark Office, Trademark Manual of Examining Procedure § 1202.08..........16

## PRELIMINARY STATEMENT

Defendant MSCHF Product Studio, Inc. ("MSCHF") respectfully submits these objections, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, to the Report and Recommendation of the Honorable Robert M. Levy, United States Magistrate Judge, dated September 4, 2026 (Dkt. No. 26) (the "R&R"), which recommends that MSCHF's motion to dismiss the Complaint under Rule 12(b)(6) be denied.

The R&R should not be adopted. Reviewed de novo, its recommendation rests on three errors, each of which independently warrants rejection.

*First*, the R&R resolved a Rule 12(b)(6) motion on facts that appear nowhere in the Complaint. Its analysis of the factors it treated as decisive—similarity of the marks, competitive proximity, and consumer sophistication—is constructed from preliminary-injunction findings entered in a different case, brought by a different plaintiff, concerning different marks (*Vans, Inc. v. MSCHF Product Studio, Inc.*); from an exhibit that Plaintiff attached to its opposition brief but not to its Complaint; and from the Magistrate Judge's own review of the parties' websites in August and September 2026. None of that material may be considered on a motion to dismiss without converting the motion under Rule 12(d), and findings made on a preliminary-injunction record in another action may not be noticed for their truth in this one.

*Second*, having gone outside the pleadings for Plaintiff's benefit, the R&R disregarded the one category of extrinsic material that the law plainly permits and that MSCHF squarely placed before the Court: the official United States Patent and Trademark Office ("USPTO") prosecution history of the very registration that Plaintiff attached to its Complaint as Exhibit A and on which every claim depends. The R&R correctly recites that a court may consider "official records of the USPTO" (R&R at 5), but it never mentions—much less analyzes—Plaintiff's representations in that file that a "WAVY" mark for clothing "is entitled to a narrow scope of protection" because of extensive third-party use, that the "modified spelling" of "Wavey" is among the "clear differences" between its mark and "WAVY," and that the relevant purchasers make "planned purchases" driven by a "narrowly focused need," such that "the likelihood of confusion tends to be minimized . . .

even where marks are similar." Those admissions bear directly on strength, similarity, proximity, and sophistication, and they render implausible the confusion that the Complaint asserts only in conclusory terms.

*Third*, the R&R misapplies settled Second Circuit law on the issues it did reach. It equates prior notice of a registration with bad faith, contrary to *Star Industries* and *Tiffany*; it disposes of MSCHF's fair-use defense in a footnote without addressing the distinct argument that the title of a single expressive work is not a trademark use; it does not address MSCHF's First Amendment defense at all; and it sustains a claim under New York General Business Law ("GBL") § 349 without confronting the rule, applied by the weight of district-court authority in this Circuit, that a trademark plaintiff must plead injury to the public beyond ordinary consumer confusion.

For these reasons, set out in detail below, MSCHF respectfully requests that the Court decline to adopt the R&R and dismiss the Complaint.

## BACKGROUND

Plaintiff WaveyBaby Holdings, LLC ("Plaintiff") commenced this action on March 31, 2023, asserting claims for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), unfair trade practices under GBL § 349, and common-law trademark infringement and unfair competition. (Compl., Dkt. No. 1.) The claims rest on a single registration, No. 6,278,813, for the standard-character mark "WaveyBaby" in Class 25, covering "Beanies; Hats; Headbands; Jackets; Sweaters; Sweatpants; T-shirts; Track suits." (Compl. ¶¶ 20–21 & Ex. A; R&R at 2 n.3.) The registration does not cover footwear. (R&R at 2 n.3.)

The Complaint alleges that MSCHF infringed that mark by releasing an artwork titled "Wavy Baby"—a distorted evocation of the Vans Old Skool skate shoe—and promoting it on MSCHF's own website and app. (Compl. ¶¶ 5–7, 22, 38.) The Complaint incorporates the website that accompanied the release (Compl. ¶ 7) and the April 2022 correspondence between counsel (Compl. ¶¶ 4, 8, 31–32), both of which MSCHF placed before the Court. (Def. Mem., Dkt. No. 13-1, Exs. 1, 3.) MSCHF also placed before the Court the USPTO prosecution history of Registration

No. 6,278,813, including Plaintiff's July 22, 2020 Response to Office Action, which is cited below by the sequential pages of the Response. (Def. Mem. Ex. 2.)

MSCHF moved to dismiss on May 9, 2023 (Dkt. No. 13), Plaintiff opposed on May 23, 2023 (Dkt. No. 14), and MSCHF replied on June 1, 2023 (Dkt. No. 15). Defendant Gabriel Whaley was voluntarily dismissed on December 18, 2025 (Dkt. No. 19), and Plaintiff voluntarily dismissed its civil-conspiracy claim on June 30, 2026 (Dkt. No. 23). The Court referred the motion to Magistrate Judge Levy on February 20, 2026. The R&R issued on September 4, 2026. No discovery has been taken. (R&R at 4.)

The R&R recommends denial of the motion in its entirety. It concludes that every *Polaroid* factor either favors Plaintiff or is neutral (R&R at 7–13); rejects MSCHF's descriptive fair-use defense in a footnote (R&R at 13 n.6); does not separately address MSCHF's First Amendment defense; and concludes that the state-law claims are adequately pleaded because the federal claims are (R&R at 14–16). These objections are timely under Rule 72(b)(2) and 28 U.S.C. § 636(b)(1).

## **STANDARD OF REVIEW**

When a party timely objects to a magistrate judge's recommended disposition of a dispositive motion, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(C). Objections that are specific and clearly aimed at particular findings in the R&R trigger de novo review. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010); *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). Each objection below is directed to an identified portion of the R&R.

On de novo review, the Court applies the familiar Rule 12(b)(6) standard: the Complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In doing

so, the Court may consider only the Complaint, documents attached to or incorporated in it, documents "integral" to it, and matters of which judicial notice may properly be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Where a document incorporated in or integral to the complaint contradicts the complaint's characterization of it, the document controls. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## ARGUMENT

### I. THE R&R IMPROPERLY RESOLVED THE MOTION ON MATERIALS OUTSIDE THE COMPLAINT (R&R at 2 nn.3–4, 3–4, 9–13)

#### A. The Rule 12(b)(6) Record Does Not Include Preliminary-Injunction Findings From Another Case, Opposition Exhibits, or the Court's Own Investigation

If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016); *Chambers*, 282 F.3d at 154. The judicial-notice exception to that rule is narrow. A court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (vacating trademark judgment that relied on findings from prior litigation); *accord Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). And findings made in granting a preliminary injunction are provisional by nature: "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A fortiori, they cannot supply the factual predicates for a complaint, in a different case, that omits them.

Nor may a plaintiff cure pleading deficiencies through exhibits to an opposition brief. "[A] party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). And a court deciding a Rule 12(b)(6) motion may not conduct its own factual investigation and rely on the results.

### B. The R&R's Findings on Similarity, Proximity, and Sophistication Rest on the *Vans* Record, Not the Complaint

The R&R candidly states that the *Polaroid* analysis is "fact-intensive" and that the Court's task is "merely to assess the legal feasibility of the complaint." (R&R at 7.) But rather than assess the Complaint, the R&R drew its facts from *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 602 F. Supp. 3d 358 (E.D.N.Y. 2022), *aff'd,* 88 F.4th 125 (2d Cir. 2023)—a preliminary-injunction proceeding in which Plaintiff was not a party, Plaintiff's mark was not at issue, and the *Polaroid* factors were analyzed as between Vans' Old Skool trade dress and MSCHF's shoe.

On *similarity*, the R&R's conclusion that Plaintiff's "allegations make similarity plausible" is supported by a citation to *Vans*, 88 F.4th at 131. (R&R at 9–10.) Nothing in *Vans* compared "WaveyBaby" to "Wavy Baby."

On *proximity*, the R&R relies on the Second Circuit's statement that the Wavy Baby was "a pair of sneakers meant to be worn," on the finding that MSCHF "advertised the Wavy Baby shoe as a wearable piece of footwear in an online marketing campaign," and on the finding that MSCHF "sold 4,306 pairs of the Wavy Baby shoe in one hour." (R&R at 10 (citing 88 F.4th at 128, 140).) The Complaint alleges none of those facts. It does not allege how many units MSCHF sold, at what price, over what period, or to whom. The R&R's parenthetical "(see also Compl. ¶ 7)" does not fill the gap: paragraph 7 alleges only that MSCHF "promoted this shoe" on its website, app, and social media.

On *sophistication*, the R&R's analysis consists entirely of *Vans*: the Second Circuit "noted" that MSCHF "engaged in broad advertising to the 'general public,'" that "customers of sneakers are not professional buyers," and that the "message of ridicule or pointed humor" of the parody was not sufficiently clear. (R&R at 12–13 (quoting 88 F.4th at 142).) The Complaint contains no allegation

about the sophistication of anyone's customers. And the parody discussion in *Vans* concerned whether the Wavy Baby successfully parodied *Vans' Old Skool*; it has nothing to do with whether any purchaser would believe that *Plaintiff* made or sponsored MSCHF's artwork.

The R&R thus treated the *Vans* findings as established facts in this case. That is precisely what *International Star Class* forbids. 146 F.3d at 70–71. It also disregards *Camenisch*: findings entered on an expedited preliminary-injunction record—affirmed under an abuse-of-discretion standard—are not adjudicated facts even as between the parties to that case, let alone as against a stranger to it. 451 U.S. at 395.

**C. The R&R Also Relied on Plaintiff's Opposition Exhibit and on the Magistrate Judge's Own 2026 Website Review**

The R&R's actual-confusion analysis notes that "Plaintiff does offer some anecdotal examples of actual customer confusion outside the complaint," citing Exhibit B to Plaintiff's opposition. (R&R at 11.) That exhibit—a collection of undated or pre-launch social-media and Shopify inquiries from anonymous users (*see* Reply, Dkt. No. 15, at 10 n.3)—is not part of the pleadings and cannot be considered. *Wright*, 152 F.3d at 178. The R&R likewise reports the Magistrate Judge's own observations that Plaintiff's website contained "no shoes for sale" as of August 25, 2026, and that MSCHF's product page "no longer exists" as of September 2, 2026. (R&R at 2 nn.3–4.) Whatever their accuracy, those observations are the product of independent factual investigation, not the Complaint.

**D. The Error Is Not Harmless**

Strip away the extrinsic material and the R&R's findings on similarity, proximity, and sophistication have no pleaded foundation. What remains are the Complaint's conclusory assertions that the marks are "confusingly similar" and that confusion is "likely" (Compl. ¶¶ 6, 34, 36–37, 45–46, 51–52, 64)—the "[t]hreadbare recitals" that *Iqbal* holds insufficient. 556 U.S. at 678. The R&R itself acknowledges that "[c]onfusion must be proven by probability, not a mere possibility." (R&R at 6 (internal quotation marks and alterations omitted).) A complaint that pleads no facts about the defendant's product, price, channels, or customers cannot make confusion

probable; and the R&R could reach that conclusion only by importing those facts from another case.

MSCHF does not ask the Court to ignore the existence of the *Vans* litigation, the preliminary injunction, or the consent judgment; those are matters of record. But the *findings* in *Vans*—what the product was, how it was marketed, how many units sold, and who bought them—are not facts alleged in this Complaint, and the Court may not treat them as such. If the Court were nonetheless inclined to consider that material, Rule 12(d) requires conversion and a "reasonable opportunity" for MSCHF to present its own evidence, including on the single-release nature of the work, its price, its distribution through MSCHF's own app under MSCHF's own name, and the absence of "Wavy Baby" from the product itself.

## II. THE R&R ERRED IN DISREGARDING PLAINTIFF'S ADMISSIONS IN THE USPTO PROSECUTION HISTORY OF THE ASSERTED REGISTRATION (R&R at 5, 7–13)

### A. The Prosecution History Is Properly Before the Court

The Complaint pleads the registration, attaches the certificate, and alleges that the registration "is valid and is listed on the Principal Register." (Compl. ¶¶ 20–21 & Ex. A.) The R&R correctly states that on a motion to dismiss the Court may consider "matters of which judicial notice may be taken, including official records of the USPTO." (R&R at 5 (quoting *Bayside Cmty. Ambulance Corps., Inc. v. Glen Oaks Volunteer Ambulance Corps., Inc.*, No. 24 CV 2114, 2024 WL 4450850, at *2 (E.D.N.Y. Oct. 9, 2024)).) Courts in this Circuit routinely take judicial notice of USPTO application and prosecution records on that basis.* See, e.g., N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 219–20 (E.D.N.Y. 2020). And an applicant's statements to the USPTO about the likelihood of confusion are relevant evidence that may be used against it in later litigation.* See Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 476 (3d Cir. 2005);* Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 673 (Fed. Cir. 1984) (applicant's "earlier contrary opinion may be considered relevant and competent" evidence).

MSCHF placed the prosecution history before the Court (Def. Mem. Ex. 2) and relied on it throughout its briefing (Def. Mem. at 3–5, 7–11; Reply at 7–10). Plaintiff did not dispute its authenticity or the propriety of judicial notice; its only response was that the statements concerned the difference between "WaveyBaby" and the previously registered "Wavy" marks. (Pl. Opp., Dkt. No. 14, at 16.) That, of course, is exactly the comparison at issue here: the only word that appears on MSCHF's product is "Wavy." (Def. Mem. at 14–15.)

**B. The R&R Does Not Mention the Prosecution History**

Despite reciting the governing rule, the R&R never refers to Plaintiff's Response to Office Action, never addresses MSCHF's argument that Plaintiff's statements there are admissions, and analyzes each *Polaroid* factor as though the file did not exist. Under de novo review, the Court should consider it. The relevant statements are these:

*Strength.* Facing a Section 2(d) refusal based on registered "WAVY" marks in Class 25, Plaintiff told the USPTO that "[t]here are at least five marks registered on the Principal Register that utilize 'WAVY' as the first element in their mark" for "similar clothing items," that such third-party registrations are "'powerful on its face' to 'show that customers . . . have been educated to distinguish between different . . . marks on the basis of minute distinctions,'" and that "the cited mark is entitled to a narrow scope of protection." (Def. Mem. Ex. 2 at 7–8.) Plaintiff also explained that "Wavey" is a "modified spelling" that is "indicative of other uses of altered spelling of commonly used terms in urban slang," and that "Baby" is "a popular and trendy use of slang." (*Id.* at 4–5.)

*Similarity.* Plaintiff told the USPTO that "[t]he average consumer is likely to engage with each mark as a whole," that "[w]hen comparing Applicant's 'WAVEYBABY' mark in its entirety to Registrant's 'WAVY' there are clear differences observed," including "[t]he modified spelling of Applicant's name to 'Wavey,'" and that the marks "are not likely to be confused on the bases of appearance, sound, meaning, connotation, or commercial impression." (*Id.* at 4, 9.)

*Proximity and sophistication.* Plaintiff told the USPTO that its goods and the "WAVY" registrant's goods, though "similar or somewhat related" and in the same class, are sold "in completely different market areas and for completely different audiences"; that the WAVY brand was "marketed towards Southern California surf and leisure culture" while WaveyBaby is "marketed towards the urban market and specifically toward Black and African American audiences and culture"; and that "the average purchaser of the goods will be a consumer with a narrowly focused need—Southern California surf/leisure culture or urban hip-hop culture. When a consumer makes planned purchases that relate to a reasonably focused need, the likelihood of confusion tends to be minimized and may often be a dispositive factor, even where marks are similar." (*Id.* at 2, 6–7.)

**C. The Admissions Defeat the Plausibility of Confusion**

Plaintiff obtained its registration on those representations. It cannot now plausibly plead their opposite. The Complaint alleges that MSCHF's work targeted the Vans Old Skool—the emblem of the very "Southern California" skate culture that Plaintiff told the USPTO its consumers do not shop for. (Def. Mem. at 2, 10–11.) The Complaint nowhere alleges that MSCHF's title appears on any garment, that MSCHF markets streetwear, or that MSCHF sells through any channel other than its own website and app under its own name. (Compl. ¶ 7.) On Plaintiff's own account of how its consumers behave—"planned purchases" driven by a "narrowly focused need"—there is no plausible probability that "numerous ordinary prudent purchasers" of Plaintiff's hip-hop streetwear would believe that Plaintiff made or sponsored a distorted Vans skate shoe released once by a Brooklyn art collective. *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005).

Where, as here, a plaintiff's allegations are contradicted by judicially noticeable documents on which the plaintiff itself relies, the Court is not required to accept the allegations as true. *Amidax*, 671 F.3d at 147; *L-7 Designs*, 647 F.3d at 422. The R&R's failure to engage with the

prosecution history at all was error, and correcting it changes the outcome on at least four of the eight *Polaroid* factors.

## III. THE R&R'S POLAROID ANALYSIS MISAPPLIES SECOND CIRCUIT LAW (R&R at 7–13)

MSCHF objects to each of the R&R's *Polaroid* findings and to its ultimate conclusion. The Second Circuit requires "a deliberate review of each factor" (R&R at 6 (quoting *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 160 (2d Cir. 2016))), and, as shown below, the R&R's review of the key factors is either unsupported by the Complaint or contrary to law.

### A. Strength of the Mark (R&R at 7–9)

The R&R concludes, in a single sentence and without analysis, that "WaveyBaby" is "inherently distinctive as an arbitrary or fanciful trademark." (R&R at 7, 9.) It does not consider the meaning of the words. By Plaintiff's own account, "wavy" is a recognized slang term (Plaintiff calls "Wavey" an "altered spelling of [a] commonly used term[] in urban slang," Def. Mem. Ex. 2 at 5), and MSCHF explained without contradiction that "wavy" is slang for something stylish and fresh. (Def. Mem. at 13.) A mark that "suggest[s] (rather than directly describe[s]) the product on which [it is] employed, or its attributes" is suggestive, not arbitrary, and suggestive marks "receive a narrower scope of protection." *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 121 (2d Cir. 2022). A slang term for "stylish" applied to fashion apparel is, at most, suggestive.

The R&R also overlooks that inherent distinctiveness and marketplace strength are distinct inquiries, and that registration establishes validity, not strength. *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 100 (2d Cir. 2001). Extensive third-party use of similar marks weakens a mark and narrows its protection. *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999) ("[T]he use of part or all of the mark by third parties weakens its overall strength." (quoting *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998))); *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir. 1991) (extensive third-party use "weighs against a

finding that [the] trade name is strong"). Plaintiff itself identified at least five registered "Wavy" marks for clothing and argued to the USPTO that the field is so crowded that consumers distinguish among them "on the basis of minute distinctions." (Def. Mem. Ex. 2 at 7–8.) The R&R does not address the crowded field. And the Complaint's allegations of acquired strength consist of a list of celebrities who have worn Plaintiff's apparel (Compl. ¶ 19); it pleads no sales figures, advertising expenditures, or consumer-recognition facts, notwithstanding the R&R's characterization (R&R at 9). This factor does not favor Plaintiff.

**B. Similarity of the Marks (R&R at 9–10)**

The R&R correctly states that similarity requires the Court to "look beyond the text" and "analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed." (R&R at 9 (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir. 2006)).) It then does not apply that standard. After observing that the names are "[o]bviously . . . very similar," the R&R discusses only that sneakers are "a common consumer item," that both parties sold "to the general public online," and that both were "promoted by figures in the hip-hop industry." (R&R at 9–10.) Those are considerations of proximity and sophistication, not similarity. The R&R never examines the marks as displayed.

Had it done so, using the website the Complaint incorporates (Compl. ¶ 7; Def. Mem. Ex. 1), it would have found that the words "Wavy Baby" do not appear on MSCHF's product at all; that the product bears only the single word "Wavy"—without the "e" and without "Baby"—in a distinctive stylization; and that the work was released under MSCHF's own prominent name through MSCHF's own app. (Def. Mem. at 8–9, 14–15.) The prominent use of a house mark and different stylization weighs against similarity. *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1044–46 (2d Cir. 1992); *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 164 (2d Cir. 2004) ("We have repeatedly found that the presence of a distinct brand name may weigh against a finding of confusing similarity."). Plaintiff's own authority holds that phonetic similarity does not establish similarity where the "composite mark, consisting of the words and the

logo design, is significantly different." *Cheddar Bob's Inc. v. Macsnmelts Mgmt. Co.*, No. 16 CV 1331, 2020 WL 1323018, at *9 (E.D.N.Y. 2020). And Plaintiff itself told the USPTO that the "modified spelling" of "Wavey" is among the "clear differences" that distinguish its mark from "WAVY." (Def. Mem. Ex. 2 at 4–5.) The R&R's citation to* Vans*, 88 F.4th at 131—which addressed the similarity of MSCHF's shoe to Vans' trade dress—provides no support. At most, this factor is neutral.

### C. Competitive Proximity (R&R at 10)

The R&R's proximity finding rests entirely on the *Vans* record (Point I.B, *supra*) and on the observation that "both companies' products are meant to convey a message or fashion statement about the wearer." (R&R at 10.) At that level of generality, every item of apparel is proximate to every other. The governing inquiry asks about "the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996). On those questions, the Complaint alleges nothing about MSCHF beyond its own website and app (Compl. ¶ 7), and Plaintiff's USPTO admissions establish that its customers are a narrowly focused audience distinct from the Southern California skate culture that MSCHF's work addressed. (Point II, *supra*.)

The R&R's own footnote undercuts its finding. It recognizes that Plaintiff's registration "does not specifically reference footwear" and that Plaintiff sells no shoes. (R&R at 2 n.3.) The Complaint's allegation that Plaintiff "engages in the sale and distribution of footwear" (Compl. ¶ 62) is contradicted by the registration Plaintiff attached, which controls. *Amidax*, 671 F.3d at 147. A one-time release of an art object evoking a skate shoe, sold through the artist's own app, is not competitively proximate to a line of hip-hop apparel sold through a retail website. *See Medici Classics Prods. LLC v. Medici Grp. LLC*, 590 F. Supp. 2d 548, 555 (S.D.N.Y. 2008). This factor favors MSCHF.

### D. Good Faith (R&R at 11–12)

The R&R holds that Plaintiff's allegation that MSCHF received a letter from Plaintiff's counsel before the release and nonetheless "knowingly, willfully, intentionally, and maliciously" used the title "is sufficient to plead intent at this point in the litigation." (R&R at 12 (citing Compl. ¶¶ 4, 38, 40).) That holding is wrong for three reasons.

*First*, the R&R applies the wrong legal test. The factor asks "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." (R&R at 12 (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995)).) "Prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener*, 59 F.3d at 397; *see Lang*, 949 F.2d at 583. Even where a defendant had actual knowledge of the senior mark, "in the absence of additional evidence indicating an intent to promote confusion or exploit good will or reputation, this Court has found the junior user to be in good faith." *Star Indus.*, 412 F.3d at 388–89. The question "is whether the defendant attempted to exploit the goodwill and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 88 (2d Cir. 2020) (internal quotation marks omitted). The Complaint alleges no fact suggesting that MSCHF sought to trade on Plaintiff's goodwill—goodwill the Complaint does not allege MSCHF knew of when it selected the title—or any reason an art collective critiquing Vans would want to be associated with Plaintiff. To the contrary, the Complaint's own theory is one of inadequate clearance: "had Defendants MSCHF done some simple due diligence . . . they would have known" of the registration (Compl. ¶¶ 24, 28), and MSCHF "knew or should have known" of Plaintiff's rights (*id.* ¶ 41). Negligence is not bad faith. The conclusory allegation of paragraph 40, pleaded "[o]n information and belief," adds nothing. *Iqbal*, 556 U.S. at 678.

*Second*, the letter on which the R&R relies is incorporated in the Complaint (Compl. ¶¶ 4, 8, 31) and is before the Court (Def. Mem. Ex. 3), and it contradicts the Complaint's characterization. It is not a "cease-and-desist letter" (Compl. ¶ 4). It is an April 12, 2022 email from

Plaintiff's then-counsel stating that she "wanted to reach out . . . before sending any formal cease and desist letters to see about your client changing the name of the shoe before their drop in the next 5 days." (Def. Mem. Ex. 3.) It was sent five days before a release that, as Plaintiff's counsel acknowledged, had already been publicly announced—that is, after MSCHF had adopted the title. MSCHF responded the next day, explaining in detail why it believed no confusion was likely. (*Id.*) The Complaint's allegation that MSCHF "defiantly pressed forward" in the face of a cease-and-desist demand (Compl. ¶ 8) is not entitled to the presumption of truth where the incorporated document shows otherwise. *Amidax*, 671 F.3d at 147.

*Third*, the error matters. The R&R relies on the same "willful" allegation to sustain the New York unfair-competition claim, for which bad faith is an essential element (R&R at 15), and the allegation is the predicate for Plaintiff's demands for enhanced, treble, and punitive damages (Compl. at 16). This factor favors MSCHF.

**E. Consumer Sophistication (R&R at 12–13)**

The R&R's sophistication analysis consists entirely of quotations from *Vans*. (Point I.B, *supra*.) Set aside the *Vans* record and consider what is properly before the Court: the Complaint describes Plaintiff's customers as a following built around specific hip-hop artists (Compl. ¶¶ 3, 19), and Plaintiff told the USPTO that those customers make "planned purchases" driven by "a narrowly focused need" such that "the likelihood of confusion tends to be minimized and may often be a dispositive factor, even where marks are similar." (Def. Mem. Ex. 2 at 7.) Nothing in the Complaint plausibly suggests otherwise. This factor favors MSCHF.

**F. Actual Confusion and Quality (R&R at 11, 12)**

MSCHF agrees that the Complaint pleads no cognizable actual confusion. The only allegation offered—that consumers believed Plaintiff was "involved in ongoing litigation with Van's Inc." (Compl. ¶¶ 26, 36)—is not confusion as to the source or sponsorship of goods. "[T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Lang*, 949 F.2d at 583. MSCHF objects to the R&R's consideration of

Plaintiff's opposition Exhibit B for the reasons in Point I.C. MSCHF agrees that the quality factor is neutral.

### G. Properly Weighed, the Factors Do Not Make Confusion Plausible

The R&R's conclusion that "all of the *Polaroid* factors either weigh in favor of permitting the trademark infringement claim to proceed or are neutral" (R&R at 13) cannot survive the corrections above. Confined to the Complaint, the incorporated website and correspondence, and the judicially noticeable prosecution history, the analysis yields at most a phonetic resemblance between a suggestive, crowded-field mark for hip-hop apparel and the title of a single art object evoking a Southern California skate shoe, released once under MSCHF's own name, to consumers whom Plaintiff itself describes as making planned, narrowly focused purchases, by a defendant with no pleaded motive to trade on Plaintiff's goodwill. That is a "sheer possibility" of confusion, not a plausible probability. *Iqbal*, 556 U.S. at 678.

That likelihood of confusion is "ordinarily" a factual question (R&R at 7) does not relieve a plaintiff of the obligation to plead facts, and courts in this Circuit dismiss Lanham Act claims at the pleading stage where, as here, the alleged confusion is implausible on the face of the complaint and the documents it incorporates. *See, e.g.*, *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183–84 (S.D.N.Y. 2012) (dismissing Lanham Act claim on the pleadings where confusion as to sponsorship was implausible). Because the Section 1125(a) claim rises or falls with the Section 1114 claim (R&R at 14), both should be dismissed.

## IV. THE R&R FAILED TO ADDRESS THE SINGLE-WORK-TITLE ARGUMENT AND MISAPPLIED THE FAIR-USE STANDARD (R&R at 13 n.6)

The R&R disposes of MSCHF's statutory fair-use defense, 15 U.S.C. § 1115(b)(4), in a footnote, reasoning that fair use is "rarely appropriate" at the pleading stage and that the necessary facts are "not so evident" on the face of the Complaint. (R&R at 13 n.6.) MSCHF objects on two grounds.

*First*, the R&R does not address MSCHF's distinct argument that "Wavy Baby" is the title of a single work and, as such, is not a trademark use at all. (Def. Mem. at 13; Reply at 3.) It is settled that the title of a single creative work does not function as a source identifier. *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 & n.2 (Fed. Cir. 2002); U.S. Patent & Trademark Office, Trademark Manual of Examining Procedure § 1202.08; *see Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989) (titles of expressive works are "of a hybrid nature, combining artistic expression and commercial promotion"). The facts establishing that argument appear on the face of the Complaint: it alleges a single product, released on a single date, bearing a single "name" (Compl. ¶¶ 38, 44, 50), and it alleges no series, no line, and no use of "Wavy Baby" on any goods. Plaintiff did not respond to the argument. (Reply at 3.) The R&R's silence on it is not a basis for adoption.

*Second*, as to descriptive fair use, the R&R identifies the correct rule—dismissal is proper "where the facts necessary to establish the defense are evident on the face of the complaint," *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)—but does not apply it. The first element, use "other than as a mark," is satisfied where the defendant does not use the term "as a symbol to attract public attention." *Id.* at 308 (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009)). The Complaint itself alleges that MSCHF used the term as the "name" of a single work, promoted under MSCHF's own name. (Compl. ¶¶ 7, 44, 50.) The second element, descriptive use, is established by the incorporated website, which explains that the title describes the work's wavy form and its "glitch" concept. (Compl. ¶ 7; Def. Mem. Ex. 1; Def. Mem. at 13–14.) And good faith is addressed in Point III.D. The R&R does not identify any pleaded fact that is inconsistent with the defense; it simply declines to reach it. On de novo review, the Court should reach it.

## V. THE R&R DOES NOT ADDRESS MSCHF'S FIRST AMENDMENT DEFENSE (R&R at 3)

MSCHF argued that the use of "Wavy Baby" as the title of an expressive work is protected under *Rogers*, 875 F.2d at 999, because the title is artistically relevant to the work and is not explicitly misleading as to source. (Def. Mem. at 15–16; Reply at 5–7.) The R&R's Discussion section does not address that defense. Its only reference is the Background statement that the

Second Circuit in *Vans* "held that no special First Amendment protections applied to insulate MSCHF against the plaintiff's trademark infringement claim." (R&R at 3 (citing 88 F.4th at 128).)

To the extent the R&R implicitly treated *Vans* as dispositive, that was error. *Vans* held *Rogers* inapplicable because MSCHF used *Vans'* marks and trade dress as source identifiers for MSCHF's own shoe—the circumstance in which *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 153 (2023), holds that *Rogers* does not apply. *See* 88 F.4th at 128. Whether the *title* "Wavy Baby"—which does not appear on the product and which accompanied a work whose source was identified by MSCHF's own name—was used as a source identifier is a different question, one that neither *Vans* nor the R&R answers. *Jack Daniel's* expressly did not decide whether *Rogers* "has merit in other contexts," 599 U.S. at 153, and it remains the law of this Circuit for titles of expressive works. The Complaint pleads no fact suggesting that the title is "explicitly misleading" as to source; its theory is that the title *sounds like* Plaintiff's mark, which *Rogers* holds insufficient. 875 F.2d at 999–1000. MSCHF preserves this defense and respectfully requests that the Court address it on de novo review.

## VI. THE STATE-LAW CLAIMS SHOULD BE DISMISSED (R&R at 14–16)

### A. Common-Law Infringement and Unfair Competition

The R&R correctly recognizes that the common-law claims mirror the Lanham Act claims, with the added requirement of bad faith for unfair competition. (R&R at 14–15.) For the reasons in Points I through III, the Lanham Act claims fail, and the common-law claims fail with them. The unfair-competition claim fails for the additional reason that the R&R's bad-faith finding rests on the mischaracterized April 12, 2022 letter and on prior knowledge alone (R&R at 15 (citing Compl. ¶¶ 4–5)), which is insufficient as a matter of law. (Point III.D, *supra*.)

### B. General Business Law § 349

The R&R sustains the GBL § 349 claim on the ground that "reasonable consumers could have been misled into believing that defendant's Wavy Baby shoe was designed and sold by WaveyBaby." (R&R at 16.) That is simply a restatement of the Lanham Act theory, and it does not

address the threshold requirement that § 349 conduct be "consumer-oriented" in the sense of harming the public interest. The Second Circuit has held that under § 349 "the gravamen of the complaint must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). Applying that rule, the weight of district-court authority in this Circuit holds that ordinary trademark-infringement claims are not cognizable under § 349 absent "specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012); *see Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273–74 (S.D.N.Y. 2003) (noting that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers that is required to state a claim under Section 349.); *Luv n' Care, Ltd. v. Walgreen Co.*, 695 F. Supp. 2d 125, 135–36 (S.D.N.Y. 2010).

The Complaint alleges only injury to Plaintiff: loss of its goodwill and customers, and harm to its reputation from association with the *Vans* litigation. (Compl. ¶¶ 56–59.) It alleges no danger to public health or safety, no deception of consumers as to the nature or quality of what they purchased, and no other harm to the public distinct from the alleged trademark injury. The § 349 claim should be dismissed for that reason, and in any event falls with the Lanham Act claims on which it depends. MSCHF recognizes that its opening brief addressed the state-law claims principally by reference to the Lanham Act claims (Def. Mem. at 11 n.6); but the R&R elected to analyze the § 349 elements independently, the question is one of pure law on the face of the Complaint, and the Court has discretion to consider it on de novo review. *See* 28 U.S.C. § 636(b)(1); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).

## VII. AT A MINIMUM, THE COURT SHOULD NOT ADOPT THE R&R'S FACTUAL CHARACTERIZATIONS DRAWN FROM THE VANS RECORD

Should the Court decline to dismiss, MSCHF respectfully requests that any order adopting the R&R make clear that the characterizations drawn from the *Vans* record—including that the

work was "a pair of sneakers meant to be worn," that MSCHF "sold 4,306 pairs . . . in one hour," that MSCHF "engaged in broad advertising to the general public," and that the parody was insufficiently clear (R&R at 10, 12–13)—are not findings in this action and do not bind the parties going forward. Those matters were never litigated between these parties, and a Rule 12(b)(6) ruling adjudicates only the sufficiency of the pleading.

## **CONCLUSION**

For the foregoing reasons, MSCHF respectfully requests that the Court sustain these objections, decline to adopt the Report and Recommendation, and dismiss the Complaint with prejudice. MSCHF respectfully requests oral argument.

Dated:

September 17, 2026

Respectfully submitted,

/s/ John F. Belcaster
John F. Belcaster
General Counsel
MSCHF Product Studio, Inc.
62 Bayard Street
Brooklyn, New York 11222
john@mschf.xyz

Counsel for Defendant MSCHF Product Studio, Inc.

To: Ezra Salami, Esq., Ezra Law, P.C., 295 Front Street, Brooklyn, New York 11201, ezra@ezralaw.co (via ECF)

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that the foregoing Objections comply with the word-count limitation of that Rule and with the Individual Motion Practices and Rules of the Honorable William F. Kuntz, II. The document was prepared in Times New Roman 12-point font, double-spaced, with one-inch margins, and contains 6736 words, exclusive of the caption, table of contents, table of authorities, signature block, and certificates, as counted by the word-processing program used to prepare it. The Objections do not exceed twenty-five double-spaced pages, exclusive of tables.

/s/ John F. Belcaster
John F. Belcaster

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2026, I caused the foregoing Objections to the Report and Recommendation to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for Plaintiff, Ezra Salami, Esq., Ezra Law, P.C., 295 Front Street, Brooklyn, New York 11201.

/s/ John F. Belcaster
John F. Belcaster